[Nos. 48964–5, 49004–0.   En Banc.   March 17, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT ANDRE FRAZIER, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. KIRK R. SPENCER, *Appellant.*

*Thurman W. Lowans* and *Soriano, Soriano, Lowans & Peterson,* for appellant Frazier.

*Robert A. Ellis* and *Ellis & Wecker,* for appellant Spencer.

*C. Danny Clem, Prosecuting Attorney,* and *Gregg Eric Johnsen* and *Patricia A. Toth, Deputies,* for respondent.

WILLIAMS, C.J.—The common issue in these consolidated cases is whether a juvenile defendant has the right to plead guilty to criminal charges in juvenile court, thereby avoiding adult criminal prosecution, when there is a pending motion to have the juvenile court decline jurisdiction pursuant to RCW 13.40.110(1)(a). In each of the cases before us, the juvenile court determined there was no right to plead guilty to the juvenile court charges. Consequently, appellants Robert Andre Frazier and Kirk R. Spencer were remanded to adult court for trial where they were convicted and sentenced to life imprisonment for first degree felony murder. We affirm.

On August 5, 1981, Robert Andre Frazier and Kirk R. Spencer robbed and severely beat an 82–year–old gentleman named Olando J. Enger outside a Bremerton restaurant. The injuries sustained by Mr. Enger were serious enough to require immediate hospitalization. Later that same day, appellants were arrested by the Bremerton police and transported to the station. Once there, appellant Spencer gave a tape recorded statement about the events of the robbery to Detective Larry D. Worland of the Bremerton Police Department. Appellant Frazier also spoke with Detective Worland, giving a somewhat different version of

the events.

At the time of the first preliminary hearing in Kitsap County Juvenile Court, appellant Frazier was 16 years old. (At the time of the crime, he was 15 years and 361 days old.) Appellant Spencer was 17 years of age.

On August 7, 1981, the State filed criminal informations in Kitsap County Superior Court, Juvenile Division, charging each appellant with robbery in the first degree. At the same time, the State also filed a notice of its intent to seek a declination of juvenile court jurisdiction pursuant to RCW 13.40.110, so that the cases could be transferred to adult criminal court for trial.

Mr. Enger remained in the hospital for several days, showed some signs of recovery from the beating, but then lapsed into a coma and died on August 10, 1981. There was sufficient expert medical testimony presented to establish that Mr. Enger died as a direct result of the beating he received from appellants.

On August 11, 1981, amended informations were filed in Kitsap County Juvenile Court, charging each appellant with conspiracy to commit first degree robbery, first degree robbery, and first degree felony murder. Again, the State filed written motions seeking a declination of jurisdiction by the juvenile court under RCW 13.40.110 and according to the guidelines of *Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966).

Several preliminary motions were set for the next day, August 12, 1981, before Juvenile Court Judge Jay W. Hamilton. After resolving matters regarding the taking of blood and hair samples from appellants and the adequacy of their legal representation under the amended informations, the court indicated a desire to proceed with arraignment. The prosecutor read the amended informations and the court ascertained that each appellant understood the charges. The court, after being notified that a remand hearing was set for August 21, 1981, instructed that appellants later be advised of the maximum potential penalties should they be convicted as juveniles.

Appellants made a special appearance before Judge James D. Roper on August 13, 1981, seeking to enter pleas of guilty to the three charges alleged in the amended informations. Both defense counsel made offers of proof that their clients stood ready to enter such pleas of guilty. Judge Roper refused to hear the matter, sustaining the State's objection that it had received no notice of the hearing. Arguments were then made for the record as to whether the motion for decline of jurisdiction pursuant to RCW 13.40-.110 prevented the juvenile court from receiving guilty pleas.

On August 17, 1981, appellants again appeared before Judge Hamilton seeking to enter guilty pleas in juvenile court. The court then took the matter under advisement for a ruling based upon the briefs submitted. On August 18, 1981, Judge Hamilton issued a memorandum opinion concluding that appellants did not have the right to enter pleas prior to their declination hearings. Formal findings of fact, conclusions of law, and an order based on the court's memorandum opinion were filed on August 20, 1981.

Appellants then sought discretionary, accelerated review in this court of the trial court's ruling on the guilty plea issue. That review was denied. Subsequently, decline hearings were held on August 27 and 28, 1981, and both juveniles were remanded to adult court for trial. Thereafter, appellant Frazier was found guilty on the basis of stipulated facts on the superior court charges and appellant Spencer was found guilty after a jury trial. Each was sentenced to life imprisonment.

On September 7, 1982, we accepted the Frazier case on certification from Division Two of the Court of Appeals. At the same time, Spencer's case was also on appeal to Division Two of the Court of Appeals. Since both cases present the same issue regarding a juvenile offender's right to plead guilty in juvenile court, Spencer's motion to transfer and consolidate the two cases for review was granted by Commissioner Crooks on September 24, 1982. Appellant Spencer raises two additional issues arising from his superior

court criminal trial which we shall address separately.

I

### RIGHT TO PLEAD GUILTY IN JUVENILE COURT

Appellants assign error to the juvenile court's refusal to accept their offers to plead guilty to the charges filed against them in juvenile court. They contend that by virtue of RCW 10.40.060 and language in *State v. Martin*, 94 Wn.2d 1, 614 P.2d 164 (1980), they were entitled to enter pleas of guilty 1 day after arraignment in juvenile court despite the prosecutor's motion to have the juvenile court decline jurisdiction.

The rules of procedure for juvenile courts are set out in the Juvenile Court Rules. JuCR 1.4(b) provides that:

> The Superior Court Criminal Rules shall apply in juvenile offense proceedings *when not inconsistent with these rules and applicable statutes.*

(Italics ours.) JuCR 7.6(a) states that "[t]he arraignment of an alleged juvenile offender is governed by CrR 4.1." JuCR 7.6(b) provides that "[t]he taking of a plea of an alleged juvenile offender is governed by CrR 4.2."

CrR 4.1(a) clearly states that promptly after an information is filed, the defendant should be arraigned. The arraignment procedure essentially consists of ascertaining the defendant's name, advising the defendant of certain rights including the right to counsel, and informing the defendant of the charges that have been filed. CrR 4.1(b)–(e). Appellants argue, and we agree, that they were arraigned before Juvenile Court Judge Hamilton on August 12, 1981, on the amended informations charging each of them with conspiracy to commit first degree robbery, first degree robbery, and first degree felony murder.

Appellants contend that regardless of the prosecutor's notification of his intent to seek a decline of juvenile court jurisdiction, upon arraignment they were immediately afforded the statutory right to enter pleas of guilty. Appellants find this right in RCW 10.40.060, which reads:

> *In answer to the arraignment, the defendant* may

move to set aside the indictment or information, or he may demur or plead to it, and *is entitled to one day after arraignment in which to answer thereto if he demand it.*

(Italics ours.) Appellants interpret this statute to give them the ability to demand to enter pleas of guilty to the juvenile court charges within 1 day of their arraignments. They then argue that since they are entitled to enter pleas of guilty, the juvenile court must accept those guilty pleas under the *Martin* reasoning.

In *Martin,* this court addressed the question of a defendant's ability to plead guilty to first degree murder and thereby avoid the possibility of the death penalty. Although we recognized that there is no constitutional right to plead guilty to a criminal charge, *United States v. Jackson,* 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968), we noted that "it is well established that the State may confer such a right by statute or by other means. *North Carolina v. Alford,* 400 U.S. 25, 38 n.11, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970)." *Martin,* at 4. We found such a right in CrR 4.2(a), and went on to hold:

Although the State appears to argue to the contrary, we have been informed of no statute or rule of court which grants a trial court authority to decline a plea of guilty made competently, knowingly, voluntarily, unconditionally, unequivocally and on advice of counsel. Moreover, unlike the law in some states, our rules and statutes nowhere suggest that prosecutorial approval is required before a defendant may plead guilty. Accordingly, we hold that in this state, a criminal defendant has the right to plead guilty unhampered by a prosecuting attorney's opinions or desires.

*Martin,* at 5.

Appellants insist the above language from *Martin* is equally applicable to juvenile court guilty pleas made competently, knowingly, voluntarily, unconditionally, unequivocally, and on advice of counsel. They point out that CrR 4.2, as well as the holding in *Martin* itself, is made applicable to the juvenile courts through JuCR 7.6(b). Therefore,

appellants argue they were entitled to plead guilty to the juvenile court charges and avoid adult criminal prosecution. We disagree.

The critical distinction between *Martin* and the cases now before us is that here, the juvenile court was required to conduct a decline hearing under RCW 13.40-.110(1)(a). That provision reads, in pertinent part:

Unless waived by the court, the parties, and their counsel, *a decline hearing shall be held where*:
(a) *The respondent is sixteen or seventeen years of age and the information alleges a class A felony* or an attempt to commit a class A felony; . . .

(Italics ours.) RCW 13.40.110(1)(a). The above provision was applicable to appellants Frazier and Spencer because at the time of their arraignments, appellants were 16 and 17 years of age, respectively, and both were charged with class A felonies. The prosecution specifically requested that decline hearings be held under the statute, so no question is presented as to a waiver of those hearings. Therefore, the juvenile court was bound by the statute to hold decline hearings to decide whether or not to transfer appellants Frazier and Spencer for adult criminal prosecution.

We think the mandatory language of RCW 13.40-.110(1)(a) requires the issue of jurisdiction over the juvenile to be resolved as a prerequisite to any further proceedings on the merits of the case, either in juvenile or superior court. Thus, a motion to decline jurisdiction under RCW 13.40.110(1)(a) stays further action on the merits of the case until a decline hearing is held in accordance with the guidelines of *Kent v. United States,* 383 U.S. 541, 566–67, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966). *See also State v. Holland,* 98 Wn.2d 507, 515 n.2, 656 P.2d 1056 (1983). Put another way, the juvenile court is without authority to resolve the case on the merits, such as by acceptance of a guilty plea, as long as a motion to decline juvenile court jurisdiction under RCW 13.40.110(1)(a) is pending.

Our construction of RCW 13.40.110(1)(a) prevents the juvenile court only from *accepting* a guilty plea prior to the

resolution of a decline hearing. The juvenile court can, of course, continue to require juvenile defendants to enter pleas of guilty or not guilty under RCW 13.40.130(1). In all other respects, the juvenile court retains plenary powers to perform any procedural requirements necessary to the efficient processing of the case.

As previously pointed out, the Superior Court Criminal Rules apply to juvenile offense proceedings "*when not inconsistent with these rules and applicable statutes.*" (Italics ours.) JuCR 1.4(b). It seems clear to us that recognition of a juvenile's right to force acceptance of a juvenile court guilty plea under CrR 4.2 and *Martin* would be entirely inconsistent with the mandatory decline hearing requirements of RCW 13.40.110(1)(a). Thus, we hold *Martin* to be inapplicable to juvenile offense proceedings where, as here, a pending motion for decline of juvenile court jurisdiction is required under RCW 13.40.110(1)(a).

The juvenile court below properly refused to accept the proffered guilty pleas of appellants Frazier and Spencer prior to resolution of their decline hearings. We find no error.

## II
### ADMISSIBILITY OF TAPE RECORDED STATEMENTS AS JURY EXHIBITS

Next, appellant Spencer assigns error to the trial court's admission into evidence of the tape recorded statement he gave to Detective Worland. He contends the jury was thereby permitted to replay the tape recording during its deliberations and attributed undue weight to that particular piece of evidence.

During trial, appellant Spencer consented to the playing of his tape recorded statement in open court. He also permitted each juror to be provided with a photocopy of the typed transcript of the conversation to read along as the tape was played. When the tape recording was offered into evidence, appellant Spencer objected on the grounds that the jury would then be permitted to replay the tape

recording during deliberations. Despite appellant Spencer's objections, the tape was admitted into evidence as State's exhibit 29. The tape, in fact, was played twice during the jury's deliberations.

Appellant Spencer appears to concede in his brief that Washington law is contrary to the argument he now makes to this court. Under the rule of *State v. Forrester,* 21 Wn. App. 855, 587 P.2d 179 (1978), a tape recorded statement of the defendant and a properly authenticated transcript thereof may, within the sound discretion of the trial court, be admitted as exhibits and reviewed by the jury during its deliberations. This rule has been stated similarly in other Washington cases. *See State v. Oughton,* 26 Wn. App. 74, 82, 612 P.2d 812 (1980); *State v. Cunningham,* 23 Wn. App. 826, 598 P.2d 756 (1979), *vacated and remanded,* 93 Wn.2d 823, 613 P.2d 1139, *on remand,* 27 Wn. App. 834, 620 P.2d 535 (1980); *State v. Whalon,* 1 Wn. App. 785, 802, 464 P.2d 730 (1970). It seems the law in Washington is in accord with the rule prevailing in the majority of states which have considered the question. *See* Annot., *Permitting Documents or Tape Recordings Containing Confessions of Guilt or Incriminating Admissions To Be Taken Into Jury Room in Criminal Case,* 37 A.L.R.3d 238 (1971 & Supp. 1982). Nevertheless, appellant Spencer contends the Washington rule is incorrect and invites this court to adopt the view that such evidence should only be admitted as court exhibits which do not go into the jury room. We decline the invitation.

In the first *Cunningham* opinion, the Court of Appeals acknowledged its awareness of other authorities which had found the admission of such exhibits for further inspection by the jury to be "highly prejudicial." *Cunningham,* 23 Wn. App. at 849. The court cited *Duggan v. State,* 189 So. 2d 890, 891 (Fla. Dist. Ct. App. 1966), a case involving the admission of three transcripts of tape recorded statements as exhibits. The *Duggan* court held the written transcripts were inadmissible because: (1) the tape recordings themselves constituted the best evidence; (2) the transcripts

were not properly authenticated and thus were purely hearsay; and (3) the jury's use of such transcripts violated the rule against undue repetition and improper evidence. The first two concerns are not present here since the tape itself was admitted as an exhibit and the tape recording was properly authenticated by Detective Worland as an incriminating statement of appellant Spencer. *See* ER 801(d). The third concern is the one most often cited by those courts that preclude such evidence from going into the jury room. *See Franklin v. State,* 74 Wis. 2d 717, 247 N.W.2d 721 (1976); *Bonicelli v. State,* 339 P.2d 1063 (Okla. Crim. App. 1959). Yet even in those courts, the tape recording itself, as opposed to a written transcript of the taped conversation, is usually permitted as an exhibit. *See, e.g., Bonicelli v. State, supra; Commonwealth v. Schwartz,* 178 Pa. Super. 434, 115 A.2d 826 (1955).

The majority and better reasoned rule permits such exhibits to go to the jury if, in the sound discretion of the trial court, the exhibits are found to bear directly on the charge and are not unduly prejudicial. In *People v. Caldwell,* 39 Ill. 2d 346, 236 N.E.2d 706, 37 A.L.R.3d 226 (1968), the Illinois court noted that written confessions were very different from matters such as depositions or dying declarations when admitted as exhibits. Whereas the latter two types of evidence were said to be too susceptible of undue emphasis beyond the scope of ordinary testimony, a different situation exists with confessions:

> [A] signed confession which has been shown by the State to be free from coercive conditions is among the strongest kinds of physical evidence the prosecution may produce, and when the tests of admissibility have been met and the defense afforded the full opportunity to point out any circumstances which may go to undermine the credibility of the confession in the eyes of the jury, there appears to us no valid reason to preclude the written confession from going to the jury room along with other exhibits which the trial judge may deem proper. . . . *Nor, in our opinion, is there a logical reason to distinguish between a written confession and other physical evidence of a*

*concededly damaging nature such as murder weapons, bloodstained clothing or gruesome photographs insofar as their presence in the jury room is concerned. In our judgment all should be governed by the general rule governing exhibits of physical evidence which may be taken to the jury room if the sound discretion of the trial judge dictates that they bear directly on the charge.* In the absence of an abuse of that discretion to the prejudice of defendant, its exercise will not be disturbed on appeal.

(Citations omitted. Italics ours.) *Caldwell,* at 359. Other courts have extended this rule to tape recorded statements since such statements are merely modern substitutes for those written in longhand and the accuracy of such recorded statements cannot be questioned. *State v. Gensmer,* 235 Minn. 72, 51 N.W.2d 680 (1951), *cert. denied,* 344 U.S. 824, 97 L. Ed. 642, 73 S. Ct. 24 (1952); *People v. Walker,* 150 Cal. App. 2d 594, 310 P.2d 110 (1957). *See also Causey v. State,* 154 Ga. App. 76, 267 S.E.2d 475 (1980); *State v. Fried,* 92 N.M. 202, 585 P.2d 647 (Ct. App.), *cert. denied,* 92 N.M. 260, 586 P.2d 1089 (1978); *Hampton v. State,* 569 P.2d 138 (Alaska 1977). We think the above accurately represents the reasoning behind the rule in Washington.

It does not appear to us that the admission of a tape recording as an exhibit, in and of itself, overly emphasizes the importance of that evidence. Nor is its admission in any way an impermissible comment on the evidence by the judge. Since the jury could have refreshed its recollection of the contents of the taped statement by rehearing the tape in open court with the trial judge's permission, *See State v. Oughton,* 26 Wn. App. 74, 82–83, 612 P.2d 812 (1980), we see no reason to automatically prevent the jury from taking such exhibits into the jury room. While trial court judges should continue to be aware of the potential for overemphasizing the importance of such evidence and should prevent such exhibits from going to the jury if unduly prejudicial, we think that decision is best left to the sound discretion of the trial judge. In the absence of an abuse of

that discretion to the prejudice of the defendant, its exercise will not be disturbed on appeal.

In the present case, the trial court judge carefully considered the possibility of prejudice in permitting appellant Spencer's tape recorded statement to go to the jury room as an exhibit. He determined that it would be less prejudicial to simply admit the tape recording as a jury exhibit without further comment and thereafter allow the jury to request additional replays of the tape. By admitting the tape recorded exhibit without a playback machine, the trial court judge assured himself that he would be apprised of and would retain some degree of control over the number of times the jury could review that particular piece of evidence. We find no abuse of discretion in this procedure and affirm the trial court's ruling.

### III
#### LESSER INCLUDED OFFENSES OF FIRST DEGREE FELONY MURDER

Finally, appellant Spencer assigns error to the trial court's failure to instruct the jury on the elements of first and second degree manslaughter as lesser included offenses of first degree felony murder. The test as to what constitutes a lesser included offense is set out in *State v. Roybal,* 82 Wn.2d 577, 583, 512 P.2d 718 (1973):

> A lesser included offense exists when all of the elements of the lesser offense are necessary elements of the greater offense. *State v. Bishop,* 6 Wn. App. 146, 491 P.2d 1359 (1971). Put another way, if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime. Comment, *The Lesser Included Offense Doctrine,* 5 Conn. L. Rev. 255, 261 (1972).

*See also State v. Culp,* 30 Wn. App. 879, 881, 639 P.2d 766 (1982).

The statutory definitions of first and second degree manslaughter require proof of specific mental elements that are not required to prove first degree felony murder. Manslaughter in the first degree requires proof of recklessness,

RCW 9A.32.060, and manslaughter in the second degree requires proof of "criminal negligence", RCW 9A.32.070. By contrast, first degree felony murder provides only that:

> (1) A person is guilty of murder in the first degree when:
>
> . . .
>
> (c) He commits . . . (1) robbery, in the first or second degree, . . . and; in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants; . . .

RCW 9A.32.030(1)(c). The above statutory provision requires no specific criminal mental state other than the one necessary for the predicate crime—in this case, robbery in the first degree. In *State v. Dudrey,* 30 Wn. App. 447, 450, 635 P.2d 750 (1981), the court simply held that "[i]n the case of felony–murder, the act, coupled with a felonious intent, may be transferred to the act resulting in death." We have previously stated, with regard to the felony murder rule, that:

> While it may be that the felony murder statute is harsh, *and while it does relieve the prosecution from the burden of proving intent to commit murder,* it is the law of this state.

(Italics ours.) *State v. Thompson,* 88 Wn.2d 13, 17, 558 P.2d 202 (1977). *Accord, State v. Dudrey, supra; State v. Peyton,* 29 Wn. App. 701, 719, 630 P.2d 1362 (1981).

Since under the test of *Roybal,* one can commit the crime of first degree felony murder without having committed first or second degree manslaughter, the latter are not lesser included offenses of the former. As such, appellant Spencer was not entitled to an instruction on the elements of first or second degree manslaughter. *Dudrey,* at 455. The trial court did not err in refusing to instruct the jury as to lesser included offenses of first degree felony murder.

In summary, we hold that: (1) appellants Frazier and Spencer were properly transferred for adult criminal prosecution because, until a decline hearing was conducted, the juvenile court lacked authority to accept their proffered

juvenile court guilty pleas; (2) the trial court properly exercised its discretion to admit, as a jury exhibit, appellant Spencer's tape recorded statement to the police; and (3) since first and second degree manslaughter are not lesser included offenses of first degree felony murder, appellant Spencer was not entitled to have the jury instructed as to those crimes. We affirm the convictions and sentences of life imprisonment of appellants Robert Andre Frazier and Kirk R. Spencer.

STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, DIM-MICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.