935 P.2d 1353 (1997)
132 Wash.2d 94
The STATE of Washington, Respondent,
v.
Edelmira G. CASTELLANOS, Appellant.
No. 64358-0.
Supreme Court of Washington, En Banc.
Argued March 26, 1997.
Decided May 8, 1997.
George P. Trejo, Jr., Yakima, for appellant.
Richard L. Weber, Okanogan County Prosecutor, Okanogan, for respondent.
SANDERS, Justice.
The trial court allowed the jury unrestricted access to audio tapes of a drug buy and a playback machine during deliberations. The defendant was convicted, the Court of Appeals affirmed, and so do we.

*1354 FACTS

A jury convicted Edelmira Castellanos of two counts of delivery of a controlled substance (marijuana) in violation of RCW 69.50.401. She was sentenced accordingly by the trial court. The facts are straightforward.
On February 5, 1993 a confidential informant working for the North Central Washington Narcotics Task Force purchased one ounce of marijuana from defendant and her son, Roberto Barrera. The confidential informant wore a body wire, enabling a task force officer to record the conversation. On February 9, 1993 the informant again purchased nine one-eighth ounce bags of marijuana from defendant and Barrera. The informant again wore a body wire. The Task Force again recorded the transaction. Police later arrested both defendant and her son, charging each with delivery of a controlled substance.
Castellanos claimed at trial that, although she was with her son on both dates, she did not engage the informant in a drug transaction. The trial court admitted the body wire tapes into evidence without objection. The State played the tapes for the jury in open court as the informant testified what transpired. The sound quality of the recording was poor. In addition to the informant's narrative, the jury followed transcripts of the tape; however, these transcripts were not offered into evidence. Castellanos did not object to the jury's use of the transcripts. Neither the tapes nor the transcripts are part of the record before this court.
The defendant objected to the submission of the audio tapes and tape player to the jury during deliberations. She argued the jury's potential repeated review of the audio tapes could cause it to unduly emphasize the taped material. However the trial court disagreed, allowing unrestricted jury access to the tapes and playback machine during its deliberations. The court reasoned, because the taped material was nontestimonial, the jury could review the tapes at its discretion like any other piece of evidence. The Court of Appeals affirmed, finding the trial court did not abuse its discretion. State v. Castellanos, 82 Wash.App. 204, 208, 916 P.2d 983 (1996). We granted review. State v. Castellanos, 130 Wash.2d 1008, 928 P.2d 415 (1996).

ISSUE PRESENTED
The sole issue on review is whether the trial court abused its discretion by allowing the jury to take audio tapes of the drug transaction with a playback machine into the jury room during deliberations.

ANALYSIS

STANDARD OF REVIEW
Decisions involving evidentiary issues lie largely within the sound discretion of the trial court and will not be reversed on appeal absent a showing of abuse of discretion. Maehren v. City of Seattle, 92 Wash.2d 480, 488, 599 P.2d 1255 (1979). An abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. State v. Huelett, 92 Wash.2d 967, 969, 603 P.2d 1258 (1979).

JUROR ACCESS TO TAPES AND EQUIPMENT
Rule 6.15(e) of the Superior Court Criminal Rules provides when the jury retires for deliberation, it "shall take with it the instructions given, all exhibits received in evidence and a verdict form or forms." Neither the Rules of Evidence nor the Superior Court Criminal Rules specifically address whether a jury may have unlimited access to audio tape exhibits and playback equipment during deliberations; however, exhibits taken to the jury room generally may be used by the jury as it sees fit.
Castellanos contends the trial court's decision interfered with "the fundamental guarantees *1355 associated with a jury trial." Pet. for Review at 4. She argues, because the trial court surrendered the use of the playback machine to the jury, and retained no control over the number of times the jury listened to the recordings, there was danger the jury would give undue emphasis to the tapes.
However in State v. Frazier, 99 Wash.2d 180, 188, 661 P.2d 126 (1983) this court held "a tape recorded statement of the defendant and a properly authenticated transcript thereof may, within the sound discretion of the trial court, be admitted as exhibits and reviewed by the jury during its deliberations." At issue in Frazier was a tape recording of an oral statement the defendant had previously given the police. We stated "such exhibits [may] go to the jury if, in the sound discretion of the trial court, the exhibits are found to bear directly on the charge and are not unduly prejudicial." Id. at 189, 661 P.2d 126. We concluded:
It does not appear to us that the admission of a tape recording as an exhibit, in and of itself, overly emphasizes the importance of that evidence. Nor is its admission in any way an impermissible comment on the evidence by the judge. Since the jury could have refreshed its recollection of the contents of the taped statement by rehearing the tape in open court with the trial judge's permission ... we see no reason to automatically prevent the jury from taking such exhibits into the jury room. While trial court judges should continue to be aware of the potential for overemphasizing the importance of such evidence and should prevent such exhibits from going to the jury if unduly prejudicial, we think that decision is best left to the sound discretion of the trial judge.
Id. at 190, 661 P.2d 126 (citation omitted). We also noted steps taken by the trial court in Frazier to avoid undue prejudice. These included allowing the taped statement to be admitted as a jury exhibit without further comment and without a playback machine. Id. at 191, 661 P.2d 126. This forced the jury to request additional replays of the tape, and thus "the trial court judge assured himself that he would be apprised of and would retain some degree of control over the number of times the jury could review that particular piece of evidence." Id. However we did not foreclose the trial court from an alternative approach.
Frazier cited State v. Forrester, 21 Wash. App. 855, 587 P.2d 179 (1978), review denied, 92 Wash.2d 1006 (1979), a Court of Appeals opinion which addressed whether a typed transcript and the tape recording itself were properly admitted. The Forrester court noted previous Washington cases had held the decision to admit either form was in the sound discretion of the trial judge, id. at 864, 587 P.2d 179, and affirmed the trial court's decision to admit the transcript, id. at 865, 587 P.2d 179.
Castellanos neither cites Frazier nor attempts to distinguish it. Rather Castellanos relies heavily on State v. Ross, 42 Wash.App. 806, 714 P.2d 703 (1986). Ross involved a shooting victim's "911" call to police in which she identified Ross as the perpetrator. At trial the State subpoenaed the victim; however, she neither appeared nor testified. In the absence of the witness, the trial judge admitted the "911" tape into evidence and allowed the jury to take the tape and a playback machine to its deliberations. The Court of Appeals reversed, holding the trial court denied Ross the constitutional right to confront witnesses. Id. at 807, 714 P.2d 703. The Court of Appeals also noted the trial court abused its discretion by allowing undue emphasis by the jury on the tape during deliberations. Id. at 812, 714 P.2d 703.
Castellanos also relies on State v. Clapp, 67 Wash.App. 263, 834 P.2d 1101 (1992), review denied, 121 Wash.2d 1020, 854 P.2d 42 (1993). In Clapp an informant wore a wire when he met with Clapp to discuss a murder plan. The police recorded the informant's *1356 and Clapp's conspiring to commit murder. At trial the judge permitted the State to play the recording twice over defense objections, allowed the jury to listen to the tape once during deliberations, and read a written transcript of the tape. The Court of Appeals affirmed. Id. at 274, 834 P.2d 1101.
We disagree with defendant that Ross and Clapp mandate reversal here. Frazier's holding is clear: tape recorded exhibits may go to the jury and the jury may take such exhibits into the jury room "if, in the sound discretion of the trial court, the exhibits are found to bear directly on the charge and are not unduly prejudicial." Frazier, 99 Wash.2d at 189, 661 P.2d 126 (emphasis added). The language in Frazier and Clapp concerning control of the juries' access to the tapes is neither dispositive nor mandatory. Rather, the cases illustrate discretionary steps a trial court may take to limit prejudicial effects, if any, of tape recordings. The rule in Frazier remains a workable method for lower courts to deal with such issues: the exhibit must bear directly on the charge and must not be unduly prejudicial.
Applying these factors here, we conclude the tapes were direct evidence of the defendant's presence and involvement in the two drug transactions. Although Castellanos does not identify how the tape recording presented a danger of unfair prejudice or how it overemphasized the importance of that evidence, she operates from the premise such evidence would result in "undue influence" and is prejudicial for that reason. However that is not the test for prejudice: "When evidence is likely to stimulate an emotional response rather than a rational decision, a danger of unfair prejudice exists." State v. Powell, 126 Wash.2d 244, 264, 893 P.2d 615 (1995). There is no claim the content of these tapes (which are not before us) caused such an emotional response in the jury as to overpower reason. We therefore conclude a reasonable person could take the view adopted by the trial court. Moreover, we find these tape recordings bore directly on the charge and were not unduly prejudicial.
Allowing the tapes with a playback machine to go to the jury is consistent with the law in most other states.[1] For instance the Wyoming Supreme Court has consistently concluded allowing the jury unlimited access to body wire tapes and a playback machine is well within the sound discretion of the trial judge. The court distinguished testimonial exhibits which are not permitted in Wyoming because of the concern such documents would, in effect, "`act as a speaking, continuous witness ... to the exclusion of the totality of the evidence taken at the trial which must be viewed in its entirety.'" Pino v. State, 849 P.2d 716, 719 (Wyo.1993) (quoting 3 David W. Louisell and Christopher B. Mueller, Federal Evidence § 390, at 683-84 (1979)). However body microphone recordings of drug transactions are not testimonial; they are recordings of the criminal act itself. Consequently, since the law favors allowing *1357 nontestimonial exhibits into the jury room, the Wyoming court found the practice to be within the permissible discretion of the trial judge. Pino, 849 P.2d at 719; see also Yung v. State, 906 P.2d 1028, 1036 (Wyo.1995) (defendant's tape-recorded confession a nontestimonial exhibit which the jury may review during deliberations); Warner v. State, 897 P.2d 472, 475 (Wyo.1995) ("[T]he general rule of exclusion [of testimonial evidence] is inapplicable with respect to tape recordings of criminal acts such as drug transactions."); Munoz v. State, 849 P.2d 1299, 1301 (Wyo. 1993) (body wire recordings of drug transaction were "a record of a criminal transaction and were non-testimonial and thus available to the jury in their deliberations as any other exhibit").
Ross is not inconsistent with our holding today. The primary concern in Ross was the inability to cross examine the absent victim who made the "911" call. Moreover, Ross's discussion of trial court abuse of discretion vis a vis jury access to the tape was extraneous to its main holding that the right to confrontation had been violated. If Ross endorses a blanket prohibition against juror access to audio tapes and playback equipment, we explicitly disagree.
The tapes at issue here were not testimonial. They were contemporaneous recordings of drug transactions and, as such, were substantive evidence of defendant's guilt. The fact the jury had unlimited access to the recordings and could play them at its whim does not prove it gave undue prominence to the exhibit. The playback machine allowed the jury to utilize the tapes as any other exhibit. Withholding the playback machine would be like admitting a written contract into evidence but denying jurors their eyeglasses necessary to read it.
"The trial judge is given the discretion to determine which exhibits shall go with the jury for good reasons. The judge has seen and heard the witnesses and is familiar with all the exhibits." State v. Snowden, 138 Ariz. 402, 675 P.2d 289, 291 (Ariz.App.1983). The trial court's decision to allow the jury unlimited access to the tapes with playback equipment was not an abuse of discretion and, thus, we affirm.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER and TALMADGE, JJ., concur.
NOTES
[1] See, e.g., State v. Gathercole, 553 N.W.2d 569, 575 (Iowa 1996) ("The [trial] court did not abuse its discretion in allowing the use of the tape recorder by the jury...."); Humphrey v. State, 591 So.2d 583, 585 (Ala.Crim.App.1991) ("The tape recorder was allowed in the jury room to aid in evaluating those [drug transaction] recordings. The trial court committed no error in allowing the tape recorder in the jury room."); State v. Halvorson, 346 N.W.2d 704, 712 (N.D. 1984) ("We agree with the reasoning of those jurisdictions which have allowed recordings and slides, along with the mechanical equipment necessary to hear or view the exhibits, to go to the jury room once the evidence is properly admitted."); State v. Poulos, 230 Kan. 512, 639 P.2d 477, 479 (1982) ("The tape was an exhibit, made before trial and contemporaneously with the offense and the arrest; it was not a transcript of trial testimony. Under the circumstances we find no abuse of discretion in permitting the tape to be sent to the jury room or for the jury to examine it and listen to it."); People v. Douglas, 66 Cal.App.3d 998, 136 Cal.Rptr. 358, 363 (1977) ("The trial court properly honored the jury's request to listen to the tape recording of the events surrounding [police] entry into defendant's apartment.").