IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2013 MAR 18 AM 10: 38
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 67779-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JUAN PABLO GIRON-CLAROS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 18, 2013 |
| | ) | |

LAU, J. — Juan Pablo Giron-Claros appeals his conviction for three counts of first degree child molestation, arguing the trial court erred by allowing the jury to repeatedly replay a videotape of the child's interview with a child interview specialist. He also contends that the prosecutor's improper arguments shifted the burden of proof, depriving him of a fair trial. Because Giron-Claros fails to demonstrate error, we affirm.

FACTS

Late in October 2010, T.M.F. began renting a bedroom to share with her five-year-old son O.F. in Giron-Claros's apartment. Giron-Claros occupied a separate bedroom with a bathroom. T.M.F. and O.F. spent between two and three hours with Giron-Claros almost every day. O.F. often played games on the Xbox in Giron-Claros's

bedroom. When T.M.F. worked from 6 p.m. to 1:30 a.m. five days per week, O.F. would stay with a co-worker's wife.

On December 15, 2010, O.F. asked to stay with Giron-Claros when T.M.F. went to work. T.M.F. agreed. The next day, T.M.F. asked O.F. how he had behaved the night before. O.F. said he behaved well, but he complained, "It's just that Pablo wants me to touch his penis all the time." Report of Proceedings (RP) (July 12, 2011) at 65. After questioning O.F., T.M.F. reported his statements to the police. A few days later, a child interview specialist interviewed O.F. with the assistance of a Spanish interpreter.

The State charged Giron-Claros with one count of first degree rape of a child and three counts of first degree child molestation. Prior to trial, the trial court determined that O.F. was competent to testify and that O.F.'s hearsay statements to his mother were admissible. The trial court also ruled that the State would be permitted to use the videotape of the interview of O.F. in its case in chief.

At trial, T.M.F. testified regarding statements O.F. made to her about his interactions with Giron-Claros. Child Interview Specialist Carolyn Webster testified about her interview with O.F. Webster did not testify regarding the substance of O.F.'s statements to her. Instead, Webster's testimony centered on her general practices during child interviews and O.F.'s responses to her questions directed to his understanding of truth and her expectations. During Webster's testimony, the State offered the videotape of the interview, and Giron-Claros did not object. The trial court admitted the videotape into evidence and allowed the State to play the tape for the jury. O.F. also testified at trial.

-2-

Giron-Claros testified in his own defense. He also called his girl friend as a witness.

After the close of evidence, outside the presence of the jury, the trial court explained that the jury would be allowed to take the videotaped interview admitted as an exhibit into the jury room with all the other exhibits and the court would address whether to provide playback equipment if the jury so requested. During deliberations, the jury requested equipment on which to view the exhibit. Giron-Claros objected, arguing that allowing the jurors to replay it would "focus them too much on just a small part of the case . . . ." RP (July 20, 2011) at 47. After hearing argument, the trial court overruled the objection. Giron-Claros then requested a single replay in the courtroom. After argument, the trial court ruled that replay equipment would be provided in the jury room without restriction.

The jury found Giron-Claros guilty of the three counts of child molestation but acquitted him of the rape charge. The trial court imposed a standard range sentence.

Giron-Claros appeals.

## DISCUSSION

Giron-Claros first contends that the trial court abused its discretion by allowing the jury to repeatedly view the videotaped interview of O.F. during deliberations. He claims the trial court failed to consider the resulting prejudice of the jury placing undue emphasis on the interview.

Decisions on evidentiary issues are within the sound discretion of the trial court and will not be disturbed on appeal absent abuse of discretion. State v. Castellanos, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997). Abuse of discretion occurs when no

reasonable person would take the view adopted by the trial court. Castellanos, 132 Wn.2d at 97.

CrR 6.15(e) provides that the jury "shall take with it the instructions given, all exhibits received in evidence and a verdict form or forms" when it retires to consider the verdict. "[E]xhibits taken to the jury room generally may be used by the jury as it sees fit." Castellanos, 132 Wn.2d at 97. The jury may take audiotape or videotape recorded exhibits into deliberations and review them "if, in the sound discretion of the trial court, the exhibits are found to bear directly on the charge and are not unduly prejudicial." State v. Frazier, 99 Wn.2d 180, 189, 661 P.2d 126 (1983); State v. Gregory, 158 Wn.2d 759, 847-48, 147 P.3d 1201 (2006) (applying same principles provided for audiotapes to videotapes). "'When evidence is likely to stimulate an emotional response rather than a rational decision, a danger of unfair prejudice exists.'" Castellanos, 132 Wn.2d at 100 (quoting State v. Powell, 126 Wn.2d 244, 264, 893 P.2d 615 (1995)).

The trial court may, in its discretion, control a jury's access to recordings to limit their prejudicial effects, if any. See, e.g., Frazier, 99 Wn.2d at 191(court allowed tape recorded statement to go to jury room without playback equipment and provided additional replays as requested by jury); State v. Clapp, 67 Wn. App. 263, 273-74, 834 P.2d 1101 (1992) (court allowed jury to hear tape and review transcript three times in open court but did not allow tape or transcript to be taken to jury room)). However, the trial court also has the discretion to allow unlimited access to recorded exhibits with playback equipment. Castellanos, 132 Wn.2d at 100-02 (rejecting "a blanket prohibition against juror access to audio tapes and playback equipment").

Relying primarily on State v. Koontz, 145 Wn.2d 650, 41 P.3d 475 (2002), Giron-Claros argues that the trial court failed to apply required protections against undue emphasis by limiting the jury's access to the videotaped interview. In Koontz, videotape, rather than written transcription, was used to record trial proceedings. Koontz, 145 Wn.2d at 651. During deliberations, the trial court allowed the jury to view videotape recordings of the complete trial testimony of three witnesses, including the defendant. Koontz, 145 Wn.2d at 652. The videotapes consisted of various camera perspectives focusing on the different trial participants and allowing the jurors a different view of the trial than each had experienced in the courtroom, effectively allowing "an improper repetition of the complete trial testimony of three critical witnesses." Koontz, 145 Wn.2d at 659. Acknowledging that the case presented a question of first impression in Washington, the Supreme Court provided guidance for trial courts considering replay of videotaped trial testimony at the request of deliberating juries in order to prevent undue emphasis on certain portions of trial testimony. Koontz, 145 Wn.2d at 657. Koontz is inapposite.

Here, the trial court admitted a video recording of an out-of-court interview as evidence and allowed the jury to take the exhibit to the jury room but did not initially provide the jury with playback equipment. When the jury requested the equipment, the trial court heard and considered Giron-Claros's objections and arguments but ultimately decided to provide playback equipment without restriction.

Giron-Claros did not argue below and does not claim here that the exhibit did not bear directly on the charge. For the first time on appeal, he suggests that the exhibit was "'likely to stimulate an emotional response rather than a rational decision'" merely

-5-

because it involved a five-year-old reporting sexual abuse. Castellanos, 132 Wn.2d at 100 (quoting Powell 126 Wn.2d at 264). But as the State points out and our review of the exhibit reveals, the record does not support his claim. Throughout the interview, O.F. appears more interested in coloring than answering questions, does not appear sad or afraid, and increasingly expresses annoyance at the length of the interview. Giron-Claros does not identify any particular act or statement of O.F. in the videotape likely to stimulate an emotional response. And the trial judge, who saw and heard all the witnesses, was familiar with all the exhibits, and was in the best position to determine the emotional impact on the jury, did not find that the exhibit was unduly prejudicial. Castellanos, 132 Wn.2d at 102. Under the circumstances, Giron-Claros fails to establish any abuse of discretion.

Next, Giron-Claros contends that the prosecutor committed misconduct by improperly shifting the burden of proof in her rebuttal argument. In particular, Giron-Claros identifies the prosecutor's repeated statement that Giron-Claros could have offered testimony of other witnesses at no cost to himself. Giron-Claros objected to these statements at trial.

Prosecutorial misconduct requires a showing that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and circumstances at trial. State v. Hughes, 118 Wn. App. 713, 727, 77 P.3d 681 (2003) (citing State v. Stenson, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997)). Prejudice is established only if there is a substantial likelihood the misconduct affected the jury's verdict. State v. Pirtle, 127 Wn.2d 628, 672, 904 P.2d 245 (1995). We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the

evidence addressed in the argument, and the jury instructions. State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).

A prosecutor commits misconduct when he shifts the burden of proof to the defendant in closing argument by suggesting that the defendant had an obligation to produce evidence of his innocence. State v. Cleveland, 58 Wn. App. 634, 648, 794 P.2d 546 (1990). A prosecutor's remarks in rebuttal, even if they would otherwise be improper, are not misconduct if they are "'invited, provoked, or occasioned'" by defense counsel's closing argument, so long as the remarks do not go beyond a fair reply and are not unfairly prejudicial. State v. Davenport, 100 Wn.2d 757, 761, 675 P.2d 1213 (1984) (quoting State v. LaPorte, 58 Wn.2d 816, 822, 365 P.2d 24 (1961)). Although it is improper to suggest that evidence not presented at trial provides additional grounds for finding a defendant guilty, it is not misconduct to argue that the evidence does not support the defense theory. State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994).

In closing, defense counsel argued at length that repeated questioning by various adults caused O.F. to remember and report events that did not occur. He also referred twice to the State's failure to call T.M.F.'s boyfriend as a witness and suggested that O.F.'s apparent knowledge of certain sexual matters may be attributed T.M.F.'s relationship with her boyfriend.

In rebuttal, the prosecutor began by acknowledging the State's burden of proof. She then argued that when a defendant chooses to present evidence, the jury may examine the defense case with "the same critical eye that we do all of the State's evidence." RP (July 20, 2011) at 39. She encouraged the jury to evaluate Giron-Claros's testimony and that of the other witness he called. She continued:

-7-

The defendant also can have any witness appear at no cost to him. So when Defense Counsel says where is Hiyell, where is the roommate, they had the opportunity to present that too.

[Defense Counsel]: Objection, Your Honor. That's improper burden shifting.

THE COURT: Overruled. Go ahead.

[Prosecutor]: Now remember, these are crimes that happened in secret. They happened behind closed door. The defendant's not going to touch [O.F.] sexually in front of any of these people. So are they witnesses? No, they're not.

Defense Counsel keeps bringing up the notion of an implanted memory. There was no evidence during this trial of an implanted memory, of a mistaken memory or anything of the sort. There is no evidence to support that whatsoever. The defendant could have brought an expert to testify to that issue.

[Defense Counsel]: Your Honor, that's clearly improper argument.

THE COURT: Overruled. Go ahead.

[Prosecutor]: And that expert could have been made to appear at no cost to him. There is no evidence of an implanted memory.

RP (July 20, 2011) at 39-40.

Here, the first statement was a fair response to defense counsel's argument regarding the State's failure to call T.M.F.'s boyfriend. The prosecutor did not improperly suggest that the jury should infer Giron-Claros's guilt from the boyfriend's absence. Cf., State v. Cleveland, 58 Wn. App. 634, 648, 794 P.2d 546 (1990) (improper to suggest there is no favorable evidence because defendant failed to present favorable evidence). Instead, the prosecutor argued that his testimony was not relevant and his absence did not weaken the State's case. This is not improper.

The second statement responded to defense counsel's argument of implanted memory, pointing out the lack of evidence and expert testimony to support the theory. The only evidence at trial about implanted memory theory was offered by the doctor who examined O.F. The doctor admitted that she was familiar with implanted memory literature and then testified that she had no concerns that O.F.'s account was the result of implanted memory. It was not improper for the prosecutor to point out the lack of

contrary evidence to support the defense implanted memory theory. See, e.g., State v. Bebb, 44 Wn. App. 803, 815-16, 723 P.2d 512 (1986) (not improper to comment on defendant's failure to call handwriting expert or lay witness familiar with his handwriting to rebut State's expert testimony on handwriting).

Moreover, we conclude that the statements could not have prejudiced the jury under the facts of this case. The jury is presumed to follow the court's instructions, which clearly instructed the jury on the State's burden of proof and the presumption of innocence. The prosecutor prefaced her statements by stating that the defendant had no burden of proof, and the defense attorney, in making his first objection, reminded the jury of that fact by stating, "That's improper burden shifting." RP (July 20, 2011) at 40. And the jury acquitted Giron-Claros of the rape charge, suggesting that it understood the burden of proof. Under these circumstances, we conclude that there is no substantial likelihood that either comment affected the jury's verdict.

Affirmed.

WE CONCUR: