# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 70017-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW McHUGH MAGNANO, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 9, 2014 |
| | ) | |

LAU, J. — Mathew Magnano appeals his second degree robbery conviction, arguing that the trial court violated his right to a public trial when it replayed an audio recording of a 911 call for the jury in a closed courtroom during deliberations. Because the jury's rehearing of properly admitted recorded evidence in a closed courtroom during deliberations implicates no public trial right, we affirm Magnano's second degree robbery conviction.

## FACTS

The jury convicted Matthew Magnano of second degree robbery. During trial, the court admitted an audio recording of the robbery victim's 911 call. Defense counsel did not object to its admission. The recording was played once for the jury during the trial.

After closing arguments, the court and counsel agreed on the exhibits that would go back to the jury room. The court and counsel discussed how to handle the 911 recording if the jury asked to hear it again. The prosecutor proposed either to let the jury replay the recording with court-provided audio equipment or let the bailiff play back the recording. Defense counsel said he "[had] no objection. Obviously if they request it, I think they should be able to return to the courtroom and review it." Report of Proceedings (RP) (Nov. 27, 2012) at 170. He also said that he and his client waived their presence during the recording playback and "would feel comfortable with having the bailiff display whatever exhibits that are requested." RP (Nov. 27, 2012) at 170-71, 172.

The jury asked to replay the 911 recording during their deliberations. The trial court consulted both counsel about the request. Magnano appeared by telephone. Defense counsel indicated:

> I did speak to Mr. Magnano. We did discuss that. He is - - he has indicated to me that he has no objection, and I have no objection to the jury panel listening to the 911 tape. It was, I believe, played for [the jury] in court. But it can be played for them, and we discussed the procedure by [which] that will be done.

RP (Nov. 28, 2012) at 6.

The prosecutor expressed concern about the public entering the courtroom during the replay. He asked the court to instruct the jury not to discuss the case in the courtroom but to deliberate in the jury room. The court responded,

> Well, I'm not sure we need to leave the [courtroom] door open. It would just be a continuation of the deliberations.
>     . . .
>     . . . I'm not going to be here. Lawyers or the clients are not going to be here. Just the bailiff will start it, and she will leave the room, and she will tell . . . the jurors, coming back in when it's done.

RP (Nov. 28, 2012) at 7. The court also explained that the bailiff would stand outside the courtroom door to prevent public entry. The court added, "So to be clear, it's not a violation of open court rule, essentially it's not open court, it's just that they . . . happen to be conducting deliberations . . . in a different room." RP (Nov. 28, 2012) at 7.

The jury convicted Magnano of second degree robbery but acquitted him of felony hit and run. The court sentenced him within the standard range. Magnano appeals.

## ANALYSIS

Magnano argues that the trial court violated his right to a public trial by replaying the 911 recording for the jury in a closed courtroom during their deliberations.[1]

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial. State v. Wise, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). Further, article I, section 10 of the Washington Constitution provides, "Justice in all cases shall be administered openly, and without unnecessary delay." This provision guarantees the public and the press a right to open and accessible judicial proceedings. State v. Easterling, 157

---

[1] Magnano argues that the trial court violated both his and the public's right to open court proceedings under article I, sections 10 and 22 of the Washington Constitution. But the analysis for the public's right to a public trial mirrors that for the defendant's right to a public trial. State v. Sublett, 176 Wn.2d 58, 71 n.6, 292 P.3d 715 (2012) (our Supreme Court has "historically analyzed allegations of a court closure under either article I, section 10 or article I, section 22 analogously, although each is subject to different relief depending upon who asserts the violation"); Easterling, 157 Wn.2d 167. Magnano provides no separate analysis, argument, or citation to authority regarding the public's right to an open trial. Regardless, even if we consider his argument, the analysis below controls.

Wn.2d 167, 174, 137 P.3d 825 (2006). While neither right is absolute, both rights are strictly guarded to ensure that a courtroom closure occurs in only the most unusual circumstances.[2] Easterling, 157 Wn.2d at 174. To protect both rights, certain proceedings must be held in open court unless application of the five-factor test set forth in State v. Bone-Club, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995), supports closure of the courtroom.[3] Easterling, 157 Wn.2d at 174-75. We review public trial claims de novo. Wise, 176 Wn.2d at 9, 288 P.3d 1113.

"The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right." State v. McCarthy, 178 Wn. App. 90, 95, 312 P.3d 1027 (2013) (citing State v. Sublett, 176 Wn.2d 58, 71, 292 P.3d 715 (2012)). "[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." Sublett, 176 Wn.2d at 71. To determine whether a proceeding

---

[2] "[A] defendant does not waive his right to a public trial by failing to object to a closure at trial." Wise, 176 Wn. 2d at 15. Accordingly, we address this issue despite Magnano's failure to object below.

[3] These five factors include:
"1. The proponent of closure . . . must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
"4. The court must weigh the competing interests of the proponent of closure and the public.
"5. The order must be no broader in its application or duration than necessary to serve its purpose." Bone-Club, 128 Wn.2d at 258-59 (alteration in original) (quoting Allied Daily Newspapers of Wash. v. Eikenberry, 121 Wn.2d 205, 210-11, 848 P.2d 1258(1993)).

implicates the right to a public trial, the Supreme Court in <u>Sublett</u> adopted a two-part "experience and logic" test. <u>Sublett</u>, 176 Wn.2d at 72. This test applies to the defendant's right to a public trial and the public's right to open proceedings. <u>State v. Burdette</u>, 178 Wn. App. 183, 191-92, 313 P.3d 1235 (2013) ("[T]he plain force of <u>Sublett</u> is that we use the experience and logic test to determine whether an event triggers the protections of either set of constitutional rights securing open trials."). The experience prong asks "'whether the place and process have historically been open to the press and general public.'" <u>Sublett</u>, 176 Wn.2d at 73 (quoting <u>Press-Enter. Co. v. Superior Court</u>, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). The logic prong asks "'whether public access plays a significant positive role in the functioning of the particular process in question.'" <u>Sublett</u>, 176 Wn.2d at 73 (quoting <u>Press-Enter. Co.</u>, 478 U.S. at 8. Only if both questions are answered in the affirmative is the public trial right implicated. <u>Sublett</u>, 176 Wn.2d at 73. The defendant has the burden to satisfy the experience and logic test. <u>Sublett</u>, 176 Wn.2d at 75, 78; <u>see also In re Pers. Restraint of Yates</u>, 177 Wn.2d 1, 29, 296 P.3d 872 (2013) ("It is [the defendant's] burden to satisfy the experience and logic test, which he fails to do.").

In <u>Sublett</u>, the jury submitted a question about the court's accomplice liability instruction. The court and counsel met in chambers to discuss the question. No one objected to this procedure. The court proposed to tell the jury to reread the instructions. Both counsel agreed. That answer was given and placed in the record. <u>Sublett</u>, 176 Wn.2d at 67.

On appeal, our Supreme Court addressed whether a trial court's response to jury questions regarding the jury instructions implicated the right to a public trial. The lead

opinion[4] concluded that such proceedings do not satisfy the experience prong of the experience and logic test. Sublett, 176 Wn.2d at 75-77. The court noted that under CrR 6.15(f)(1), a trial court's responses to jury inquiries must be made part of the record, but the rule does not specify how this must occur, i.e., does not specify that responses must be put on the record in open court. Sublett, 176 Wn.2d at 76-77. The court found that CrR 6.15(f)(1) is the only authority governing the response to a jury inquiry, showing that there is no historical requirement that such proceedings be conducted in open court. Sublett, 176 Wn.2d at 77. And, under the logic prong, the lead opinion concluded that "[n]one of the values served by the public trial right is violated under the facts of this case." Sublett, 176 Wn.2d at 77. Accordingly, "no closure occurred because this proceeding did not implicate the public trial right, and therefore there was no violation of either petitioners' public trial right." Sublett, 176 Wn.2d at 77.

Here, it is undisputed that the trial court closed the courtroom when it played the 911 recording for the jury to protect the secrecy of the jury's deliberations without a Bone-Club analysis.[5] No published Washington opinion has addressed whether the right to a public trial is implicated by the jury's rehearing of a properly admitted 911

---

[4] The lead opinion in Sublett was a plurality opinion by four justices. Justice Madsen's concurrence agreed with both the lead opinion's conclusion that not all trial proceedings closed to the public implicate the public trial right and its adoption and application of the experience and logic test. Sublett, 176 Wn.2d at 92-94 (Madsen, C.J., concurring). Thus, a majority of the court supports these holdings.

[5] The record is clear that the court treated this as part of the jury's deliberative process.

-6-

recording during their deliberations. We hold that these circumstances did not implicate

Magnano's right to a public trial.

Not only does CrR 6.15(f)(1) give a trial court discretion as to how it responds to

jury inquiries, it also gives the trial court discretion in how the court permits the jury to

rehear evidence:

> Written questions from the jury, the court's response and any objections thereto shall be made a part of the record. The court shall respond to all questions from a deliberating jury in open court or in writing. In its discretion, the court may grant a jury's request to rehear or replay evidence, but should do so in a way that is least likely to be seen as a comment on the evidence, in a way that is not unfairly prejudicial and in a way that minimizes the possibility that jurors will give undue weight to such evidence.

CrR 6.15(f)(1) (emphasis added). There is no authority aside from CrR 6.15(f)(1) that

governs the manner in which a trial court permits a jury to rehear evidence. As in

Sublett, we conclude that the jury's rehearing of a 911 recording during their

deliberations is not a process that has "'historically been open to the press and general

public.'" Sublett, 176 Wn.2d at 73 (quoting Press-Enter., 478 U.S. at 8).

Magnano disagrees, contending that "historically, preventing the jury from placing

undue emphasis on a 911 recording admitted into evidence has established the rule

that the trial judge must control the jury's access to replays." Appellant's Br. at 11. He

cites numerous cases from Washington and other jurisdictions that address this

concern, some of which recommend that replays occur in "open court."[6] None of those

---

[6] See State v. Frazier, 99 Wn.2d 180, 188-91, 661 P.2d 126 (1983); State v. Koontz, 145 Wn.2d 650, 657, 41 P.3d 475 (2002); State v. Clapp, 67 Wn. App. 263, 273-74, 834 P.2d 1101 (1992); State v. Burr, 195 N.J. 119, 135, 948 A.2d 627 (2008); State v. Dixon, 259 Neb. 976, 987, 614 N.W.2d 288 (2000); State v. Gould, 241 Conn. 1, 15, 695 A.2d 1022 (1997); Young v. State, 645 So. 2d 965, 968 (Fla. 1994); Martin v.

-7-

cases address the right to a public trial or hold that the public must be allowed access during the jury's rehearing of recorded evidence during their deliberations. Nor do they suggest that public access would prevent the jury from placing undue emphasis on the evidence. Rather, the references in those cases to rehearing evidence in "open court" serve to distinguish a controlled environment from the jury's unrestricted review in the jury room. See, e.g., State v. Frazier, 99 Wn.2d 180, 191, 661 P.2d 126 (1983) (judge admitted tape recorded statement as exhibit and allowed jury to request additional replays during deliberations; "[b]y admitting the tape recorded exhibit without a playback machine, the trial court judge assured himself that he would be apprised of and would retain some degree of control over the number of times the jury could review that particular piece of evidence"); State v. Koontz, 145 Wn.2d 650, 651-52, 657-61, 41 P.3d 475 (2002) (trial court allowed jury to review videotaped trial testimony of three witnesses; issue was whether allowing jury to see and hear the testimony a second time during deliberations unduly emphasized the testimony; our Supreme Court reversed, treating review of videotaped trial testimony as different from review of admitted sound or video exhibits and holding that the trial court failed to take sufficient precautions to prevent undue emphasis on the replayed testimony); State v. Clapp, 67 Wn. App. 263, 274, 834 P.2d 1101 (1992) (trial court properly allowed jury to hear body wire tape recording more than once and did not violate rule against undue repetition where the court "scrupulously controlled the jury's access to the tape" and carefully considered and guarded against the possibility of prejudice).

---

State, 747 P.2d 316, 320 (Okla. Crim. App. 1987); Chambers v. State, 726 P.2d 1269, 1276 (Wyo. 1986); Watkins v. State, 237 Ga. 678, 681, 229 S.E.2d 465 (1976).

Further, our Supreme Court has rejected a rule that the jury may only rehear recorded evidence in a controlled environment. See State v. Castellanos, 132 Wn.2d 94, 102, 935 P.2d 1353 (1997) ("The trial court's decision to allow the jury unlimited access to [audio body wire tapes of a drug transaction] with playback equipment was not an abuse of discretion and, thus, we affirm."). Castellanos also distinguished between the taped trial testimony at issue in Frazier and the body wire tapes, noting that the body wire tapes "were contemporaneous recordings of drug transactions and, as such, were substantive evidence of [Castellanos's] guilt." Castellanos, 132 Wn.2d at 102. The court explained,

> The fact the jury had unlimited access to the recordings and could play them at its whim does not prove it gave undue prominence to the exhibit. The playback machine allowed the jury to utilize the tapes as any other exhibit. Withholding the playback machine would be like admitting a written contract into evidence but denying jurors their eyeglasses necessary to read it.

Castellanos, 132 Wn.2d at 102.

Similarly, here the audio recording was a contemporaneous recording of a 911 call made by the robbery victim shortly after the robbery occurred. The recording was admitted without objection as an exhibit at trial and submitted to the jury with the agreement of both parties. Magnano fails to show that the jury's rehearing of the recording in the closed courtroom during their deliberations is a process historically open to the press and the public. He fails to establish the experience prong of the experience and logic test. This failure means no public trial right was implicated here because no "closure" for public trial purposes occurred. See Sublett, 176 Wn.2d at 73 (defendant must establish both prongs of experience and logic test).

Magnano also fails to establish the logic prong. The process of replaying properly admitted evidence to a deliberating jury is not one that benefits from public access. Sublett described the purposes of the public trial right: "[T]he right to a public trial serves to ensure a fair trial, to remind the prosecutor and the judge of their responsibility to the accused and the importance of their functions, to encourage witnesses to come forward, and to discourage perjury." Sublett, 176 Wn.2d at 72. In Wise, 176 Wn.2d at 5-6, decided the same day as Sublett, our Supreme Court similarly explained:

> A public trial is a core safeguard in our system of justice. Be it through members of the media, victims, the family or friends of a party, or passersby, the public can keep watch over the administration of justice when the courtroom is open. The open and public judicial process helps assure fair trials. It deters perjury and other misconduct by participants in a trial. It tempers biases and undue partiality. The public nature of trials is a check on the judicial system, which the public entrusts to adjudicate and render decisions of the highest import. It provides for accountability and transparency, assuring that whatever transpires in court will not be secret or unscrutinized. And openness allows the public to see, firsthand, justice done in its communities.

These purposes are served by offering audio recording evidence, admitting it or not, and playing it for the jury in open court. No more is gained by requiring the jury to review the already-admitted evidence during deliberations in open court.

To allow the public to participate in the jury's review of admitted evidence invites the public to influence jury deliberations. "[T]here can be no question that [the jury] must reach its decision in private, free from outside influence." State v. Cuzick, 85 Wn.2d 146, 149, 530 P.2d 288 (1975). The secrecy of jury deliberations is a "cardinal principle" of the Sixth Amendment right to an impartial jury. State v. Elmore, 155 Wn.2d 758, 773, 123 P.3d 72 (2005). The purpose of restricting access to the jury room is to

insulate the jury from any out-of-court communications that may prejudice its verdict. State v. Christensen, 17 Wn. App. 922, 924, 567 P.2d 654 (1977). Here, the trial court properly allowed the jury to rehear a 911 recording that was properly admitted and played in open court during trial. Because the proceeding does not implicate the values served by the public trial right, Magnano fails to establish the logic prong of the experience and logic test.

We hold that the public trial right did not attach to the jury's rehearing of the 911 evidence in the courtroom during deliberations.

## CONCLUSION

Because the jury's rehearing of properly admitted recorded evidence in a closed courtroom during deliberations implicates no public trial right, we affirm Magnano's second degree robbery conviction.

WE CONCUR:

-11-